# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| CEDERICK WHITESIDE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | No. 22-1071-SHM-tmp |
| | ) | |
| JEFF SMITH, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

## ORDER DISMISSING CONSOLIDATED COMPLAINT (ECF NOS. 1 & 4) WITH PREJUDICE IN PART AND WITHOUT PREJUDICE IN PART; GRANTING LEAVE TO AMEND; AND DENYING PENDING MOTION (ECF NO. 7)

---

On April 20, 2022, Plaintiff Cederick Whiteside filed (1) a *pro se* complaint pursuant to 42 U.S.C. § 1983 (ECF No. 1); (2) a motion for leave to proceed *in forma pauperis* (ECF No. 2); and (3) an amended complaint (ECF No. 4). When Whiteside filed the complaint and amended complaint, he was confined at the Henderson County Justice Center (the "HCJC") in Lexington, Tennessee. (ECF No. 1 at PageID 2; ECF No. 4-1 at PageID 40.) On April 20, 2022, the Court granted leave to proceed *in forma pauperis*. (ECF No. 5.) On April 29, 2022, J. Colin Morris, Esquire entered an appearance on behalf of Whiteside. (ECF No. 6.) On December 19, 2022, Morris filed a motion for (1) a case update, summons, (2) service of process, and (3) a scheduling order on behalf of Whiteside. (ECF No. 7 (the "Motion").)

Before the Court are the complaint (ECF No. 1), the amended complaint (ECF No. 4), and the Motion (ECF No. 7).

Whiteside's claims under § 1983 arise from alleged "mold / mildew" in the showers at the HCJC during his confinement from July 24, 2020 through "months after months [sic] into 2021." (ECF No. 1 at PageID 5-9 & 12-18.)  The complaint alleges claims of (1) discrimination; (2) failure to train; (3) "malice"; (4) "deliberate indifference"; (5) violation of Whiteside's rights under the First, Fifth, and Fourteenth Amendments (6) "official misconduct"; (7) "dignitary tort"; (8) "emotional stress" and "anxiety"; (9) negligence; (10) "cruel punishment"; (11) "turpitude"; (12) "actual fraud"; and (13) denial of right of access to the courts.  (*Id*. at PageID 4.)  The complaint sues: (1) Captain Jeff Smith of the HCJC; (2) Lieutenant Jackie Bausman of the HCJC; (3) Officer Sandra Coleman of the HCJC (Defendants (1), (2) & (3) are referred to as the "Individual Defendants"); (4) Henderson County, Tennessee (the "County"); and (5) the HCJC.  (*Id*. at PageID 1-2.)  Whiteside sues the Individual Defendants in their official and individual capacities.  (*Id*. at PageID 3.)  Whiteside seeks five million dollars ($5,000,000.00) from each of the Individual Defendants.  (*Id*.)  Whiteside seeks fifteen million dollars ($15,000,000.00) from the County.  (*Id*.)

The amended complaint alleges supplemental facts about Whiteside's claims of discrimination, cruel and unusual punishment, and conditions of confinement.  (ECF No. 4 at PageID 38-39.)  The amended complaint also alleges a claim of property loss.  (*Id*. at PageID 39.)

The Court CONSOLIDATES the complaint and the amended complaint as the "Consolidated Complaint" (ECF Nos. 1 & 4) for purposes of screening Whiteside's § 1983 claims under the Prison Litigation Reform Act, 28 U.S.C. §§ 1915, *et seq*. (the "PLRA").

For the reasons explained below: (1) the Consolidated Complaint (ECF Nos. 1 & 4) is PARTIALLY DISMISSED WITH PREJUDICE and PARTIALLY DISMISSED WITHOUT PREJUDICE; (2) leave to amend the claims dismissed without prejudice is GRANTED; and (3) the Motion (ECF No. 7) is DENIED.

## I.  <u>LEGAL STANDARD</u>

The Court must screen prisoner complaints and dismiss any complaint, or any portion of it, if the complaint —

> (1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

28 U.S.C. § 1915A(b); *see also* 28 U.S.C. § 1915(e)(2)(B).

In assessing whether the complaint states a claim on which relief may be granted, the Court applies the standards under Federal Rule of Civil Procedure 12(b)(6), as stated in *Ashcroft v. Iqbal*, 556 U.S. 662, 677–79 (2009), and in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–57 (2007). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Under those standards, the Court accepts the complaint's "well-pleaded" factual allegations as true and then determines whether the allegations "plausibly suggest an entitlement to relief." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Iqbal*, 556 U.S. at 681). The Court does not assume that conclusory allegations are true, because they are not "factual," and all legal conclusions in a complaint "must be supported by factual allegations." *Iqbal*, 556 U.S. at 679. Federal Rule of Civil Procedure 8 provides guidance on this issue. Although Rule 8 requires a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief," it also requires factual allegations to make a "'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Courts screening cases accord more deference to *pro se* complaints[1] than to those drafted by lawyers. "*Pro se* complaints are to be held 'to less stringent standards than formal pleadings drafted by lawyers,' and should therefore be liberally construed." *Williams*, 631 F.3d at 383 (quoting *Martin v. Overton*, 391 F.3d 710, 712 (6th Cir. 2004)). *Pro se* litigants are not exempt

---

[1] Whiteside drafted the initial complaint and the amended complaint. (*See* ECF No. 1 at PageID 18; ECF No. 4 at PageID 39.)

from the requirements of the Federal Rules of Civil Procedure. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989); *see also Brown v. Matauszak*, 415 F. App'x 608, 612, 613 (6th Cir. 2011) (affirming dismissal of *pro se* complaint for failure to comply with "unique pleading requirements" and stating "a court cannot 'create a claim which [a plaintiff] has not spelled out in his pleading'" (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975))).

## II.   ANALYSIS

### A.   Whiteside's Claims That Arose More Than One Year Before April 17, 2022 Are Time-Barred

The limitations period for § 1983 actions arising in Tennessee is the one-year limitations provision found in Tenn. Code Ann. § 28-3-104(a)(1)(B). *Roberson v. Tennessee*, 399 F.3d 792, 794 (6th Cir. 2005). In Tennessee, civil actions for compensatory damages or injunctive relief brought under the federal civil rights statutes must be commenced within one year of the accrual of the cause of action. *Irick v. Ray,* 628 F.3d 787, 798 (6th Cir. 2010) (citation omitted). "[T]he accrual date of a § 1983 claim is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007) (emphasis in original). "Under federal law, the limitations period begins to run when a plaintiff knew or should have known of the injury that forms the basis of the claim." *Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007). The discovery rule provides that "the statute of limitations commences to run when the injury occurs or is discovered, or *when in in the exercise of reasonable care and diligence, it should have been discovered.*" *Gilmore v. Davis*, 185 F. App'x 476, 481 (6th Cir. 2006) (emphasis in original) (quoting *McCroskey v. Bryant Air Conditioning Co.*, 524 S.W.2d 487, 494 (Tenn. 1975)).

Whiteside's factual allegations date back at least to July 24, 2020. (*See*, *e.g.*, ECF No. 1 at PageID 5 (alleging that Whiteside was arrested and "booked into" the HCJC on July 24, 2020, and he "noticed a bad skin rash … after a few days … after taking a shower")); *see also id.* at PageID 7 (alleging "mold [and] mildew [in] … the shower [at the HCJC] months after months

4

[sic] into 2021").)  Whiteside says that the alleged unconstitutional conditions of confinement at the HCJC have lasted "for over a year and a half".  (*Id*. at PageID 16.)

The time during which Whiteside experienced alleged mold and mildew in the HCJC's showers is unclear from the Consolidated Complaint.  The Court is not at liberty to speculate about claim accrual dates for statute of limitations purposes.  To the extent any of Whiteside's claims under § 1983 arose more than one (1) year before April 17, 2022 -- *i.e.*, the date he signed and mailed his complaint (ECF No. 1-1 at PageID 19) -- those claims are barred by the statute of limitations (the "Time-Barred Claims").  The Time-Barred Claims are DISMISSED WITH PREJUDICE.

**B.  Claims Of "Dignitary Tort", "Negligence", "Turpitude", And "Actual Fraud"**

Whiteside sues under 42 U.S.C. § 1983.  (ECF No. 1 at PageID 1.)  To state a claim under § 1983, a plaintiff must allege two elements: (1) a deprivation of rights secured by the "Constitution and laws" of the United States, and (2) that a defendant caused harm while acting under color of state law.  *Adickes v. S.H. Kress & Co*., 398 U.S. 144, 150 (1970).  Whiteside's allegations of "dignitary tort", "negligence", "turpitude", and "actual fraud" (collectively, the "Four Claims") fail to state a claim to relief, and are DISMISSED WITH PREJUDICE, for several reasons.

1.  *The Four Claims Do Not Allege Deprivation Of Whiteside's Federal Constitutional Rights*:  Claims of negligence, fraud, and other torts arise under state law, not under the United States Constitution.  *See*, *e.g.*, *Royston v. Malone*, No. 2:16-cv-345, 2017 WL 385774, at *2 (E.D. Tenn. Jan. 26, 2017) ("[S]tate tort[s] [are] not properly cognizable under 42 U.S.C. § 1983"); *Tiger v. Pynkala*, No. 14-2312, 2014 WL 5502405, at *13 (W.D. Tenn. Oct. 30, 2014) (claims under § 1983 must allege that a defendant acted under color of state law to deprive a plaintiff of federal constitutional or statutory rights); *Lewellen v. Metropolitan Gov't of Nashville & Davidson Cnty.,*

*Tenn.,* 34 F.3d 345, 348 (6th Cir. 1994) ("[I]t is now firmly settled that injury caused by negligence does not constitute a 'deprivation' of any constitutionally protected interest"). Whiteside's allegation of "turpitude" seems to claim that the Defendants committed a crime of moral turpitude in failing to clean alleged mold and mildew in the HCJC's showers. *See*, *e.g.*, 8 U.S.C. § 1227(a)(2)(A)(i) (qualifying aliens who are "convicted of a crime involving moral turpitude" for deportation in certain circumstances); *Lovano v. Lynch*, 846 F.3d 815, 817 (6th Cir. 2017) (discussing the meaning of the statutory phrase "crime involving moral turpitude"). The prosecution of individuals under statutes that criminalize acts of "moral turpitude" is within the power of federal and state prosecutors, not private litigants or federal District Courts. The Consolidated Complaint's claim of "turpitude" is DISMISSED WITH PREJUDICE

      2.   <u>*Whiteside Fails To Plead Fraud With Particularity*</u>: Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "So long as a [plaintiff] pleads sufficient detail — in terms of time, place and content, the nature of a defendant's fraudulent scheme, and the injury resulting from the fraud — to allow the defendant to prepare a responsive pleading, the requirements of Rule 9(b) will generally be met." *United States ex rel. SNAPP, Inc. v. Ford Motor Co*., 532 F.3d 496, 504 (6th Cir. 2008). "Generalized and conclusory allegations that the Defendants' conduct was fraudulent do not satisfy Rule 9(b)." *Bovee v. Coopers & Lybrand C.P.A*., 272 F.3d 356, 361 (6th Cir. 2001). Whiteside does not allege any fraudulent conduct or a fraudulent scheme by the Defendants with particularity. Instead he alleges generally: "I'm claiming … actual fraud." (ECF No. 1 at PageID 4.) Whiteside does not allege detailed facts about the time, place, and content of the alleged "actual fraud." (*Id*.) Whiteside's claim of "actual fraud" is DISMISSED WITH PREJUDICE on the additional ground that it fails to satisfy the pleading requirement of Fed. R. Civ. P. 9(b).

**C.** **Claims Against (1) The HCJC, (2) The County, And (2) The Individual Defendants In Their Official Capacities**

Whiteside sues the Individual Defendants in their official and individual capacities. (ECF No. 1 at PageID 3.)[2]

Under § 1983, a jail is not a "person" subject to suit. The Court construes Whiteside's claims against the HCJC as claims against the County. *See Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000).

The Consolidated Complaint's official capacity claims against the Individual Defendants are treated as claims against the Individual Defendants' employer — the County. *See Jones v. Union Cnty., Tennessee*, 296 F.3d 417, 421 (6th Cir. 2002) (citing *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994)).

The County may be held liable only if Whiteside's injuries were sustained pursuant to an unconstitutional custom or policy of the County. *See Monell v. Dep't of Soc. Serv.*, 436 U.S. 658, 691-92 (1978). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). "[T]he touchstone of 'official policy' is designed 'to distinguish acts of the *municipality* from acts of *employees* of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 138 (1988) (quoting *Pembaur v. Cincinnati*, 475 U.S. 469, 479-80 (1986) (emphasis in original)). Whiteside does not allege that he has been deprived of a right because of a policy or custom of the County. He alleges constitutional violations arising from the Individual Defendants' personal

---

[2] The Court construes Whiteside's allegation of "official misconduct" as an official capacity claim against the Individual Defendants. (ECF No. 1 at PageID 4.)

conduct in maintaining showers at the HCJC.  Whiteside does not state a claim to relief against the HCJC, against the County, or against the Individual Defendants in their official capacities because the Consolidated Complaint's allegations fail to identify an official policy or custom of the County that caused injury to Whiteside.

Whiteside's claims against the HCJC, the County, and the Individual Defendants in their official capacities are DISMISSED WITHOUT PREJUDICE for failure to allege facts stating claims to relief.

### D.  Claim Of Discrimination Against The Individual Defendants In Their Individual Capacities

White alleges two fact patterns to support his allegation that the Individual Defendants "discriminat[ed]" against him (*see* ECF No. 1 at PageID 4): (1) Whiteside alleges that the Individual Defendants' failure "to move me" from the "A Pod" at the HCJC, which allegedly had "mold and mildew inside the shower and the ceiling walls", "has now resulted in official misconduct and discrimination" by the Individual Defendants.  (*Id*. at PageID 12 & 14 (the "Alleged Shower Discrimination")); and (2) Whiteside alleges that women detainees who "are booked into the [HCJC] … receive e-cigs, TV, and clothing [collectively, the "Booking Allotments"], unlike guys and myself.  This is gender discrimination."  (ECF No. 4 at PageID 39 (the "Alleged Booking Discrimination").)

The Court construes Whiteside's allegations as a claim of deprivation of Whiteside's rights under the Equal Protection Clause of the Fourteenth Amendment.

The Equal Protection Clause of the Fourteenth Amendment directs that no state shall "deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Equal Protection Clause states that all persons similarly situated should be treated alike, prohibiting discrimination by government which burdens a fundamental right, targets a suspect class, or intentionally treats one differently than others similarly situated without any rational basis

for the difference. *See, e.g., City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *EJS Prop., LLC v. City of Toledo*, 698, F.3d 845, 864 (6th Cir. 2012); *Schellenberg v. Twp. of Bingham*, 436 F. App'x 587, 591 (6th Cir. 2011).  "[T]o establish an equal protection violation, a plaintiff must establish more than differential treatment alone – a discriminatory intent or purpose is required."  *Maye v. Klee*, 915 F.3d 1076, 1085 (6th Cir. 2019) (citing *Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 264-65 (1977)). To prevail under an equal protection challenge, a claimant "must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."  *Deleon v. Kalamazoo Cnty. Rd. Comm'n*, 739 F.3d 914, 918 (6th Cir. 2014).  Allegations of intentional discrimination based on membership in a protected class must be supported by facts.  Merely alleging that an individual's actions were based on membership in a protected class and were "supported by animosity towards [the] plaintiff" who belongs to a different [class] does not suffice.  *Nali v. Ekman*, 355 F. App'x 909, 912-13 (6th Cir. 2009).

The Consolidated Complaint does not allege facts from which to plausibly infer that the Individual Defendants were motivated to treat Whiteside differently on the basis of Whiteside's membership in a protected class.  *See Nali*, 355 F. App'x at 913; *Deleon*, 739 F.3d at 918.

The plausible inference from Whiteside's factual allegations about the Alleged Shower Discrimination is that the Individual Defendants treated all pretrial detainees the same as to shower conditions.  (*See, e.g.*, ECF No. 1 at PageID 16 (alleging that "each inmate at the jail … should not have to be subjected to any of this [moldy shower] treatment nor improper [shower] inspections at the jail").)  The Consolidated Complaint alleges that all HCJC detainees experienced mold-ridden and mildew-covered showers.  That allegation undermines Whiteside's claim of discrimination against him in violation of the Equal Protection Clause.

9

The Alleged Booking Discrimination is not actionable because Whiteside does not allege facts demonstrating his membership in a protected class.  Prisoners, as a group, are not members of a protected class for equal protection purposes.  *See Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  Sex is a protected class, *see*, *e.g.*, *Lundy v. Gen. Motors Corp.*, No. 03-3618, 2004 WL 1262134, at *2 (6th Cir. June 4, 2004), but Whiteside does not demonstrate that he was deprived of the Booking Allotments solely because he is male detainee.  *Nali*, 355 F. App'x at 913. Whiteside's unsupported conclusory allegation of discrimination is insufficient to state a claim to relief.  *See id.*; *see also* ECF No. 4 at PageID 39.

Whiteside's claim of discrimination against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE because the Consolidated Complaint does not allege sufficient facts demonstrating a claim to relief for discrimination in violation of the Fourteenth Amendment's Equal Protection Clause.

To the extent Whiteside alleges, in support of his claim of discrimination, that the Individual Defendants failed to train HCJC staff about shower maintenance (*see* ECF No. 1 at PageID 14-15), the Consolidated Complaint also fails to state a claim to relief.  Absent evidence of personal involvement in the alleged underlying misconduct, a county official defendant cannot be individually liable based on his failure to train or supervise.  *Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 646–48 (6th Cir. 2012).  The Sixth Circuit has found that an attempt to hold an officer liable in his individual capacity for his "alleged failure to adequately train employees ... 'improperly conflates a § 1983 claim of individual supervisory liability with one of municipal liability.'" *Harvey v. Campbell Cnty.*, 453 F. App'x 557, 563 (6th Cir. 2011) (citation omitted). Even assuming that the Individual Defendants had some responsibility for developing or implementing shower maintenance policies at the HCJC, which the Consolidated Complaint does not clearly allege, the Individual Defendants cannot be held liable for money damages.  Whiteside

does not allege facts demonstrating that the Individual Defendants were personally involved in unconstitutional conduct. *See Heyerman*, 680 F.3d at 647–48. Whiteside's claim of failure to train against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE.

**E.** **Claim Of "Malice", "Deliberate Indifference" And "Cruel Punishment" Against The Individual Defendants In Their Individual Capacities**

Whiteside alleges that the HCJC's showers have "smell[ed] of mold" since he was booked into the A Pod on July 24, 2020. (ECF No. 1 at PageID 5.) Whiteside alleges that he saw "wall to wall and ceiling mold" and "mildew on the [showers'] floors and ceilings" at "the end of August 2020." (*Id*. (the "A Pod Shower Conditions").) Whiteside says that he began to experience "a bad skin rash" and "a sinus problem" a few days after arriving at the HCJC's A Pod. (*Id*.) Whiteside submitted several grievances about the A Pod Shower Conditions to Smith and Bausman, "which were ignored." (*Id*. at PageID 6.)

Whiteside alleges that, after he verbally grieved the A Pod Shower Conditions "in house", he was "told to move to C Pod, where the shower was twice as bad." (*Id*. (the "C Pod Shower Conditions").) Three (3) days after arriving at the HCJC's C Pod, Whiteside allegedly "was so sick for days." (*Id*. at PageID 6.) Whiteside was treated at the HCJC's medical office for alleged "sinus, rash, and chest infection." (*Id*. at PageID 7.) The HCJC's nurse provided medication, which "help[ed] but the issue[s] would keep coming back." (*Id*.) Whiteside reported the C Pod Shower Conditions to Smith and Bausman. (*Id*.) Whiteside's request to purchase cleaning materials for the C Pod Shower Conditions was denied by unspecified persons for "months after months into 2021." (*Id*.) Whiteside's requests to meet with "the state and county [shower] inspectors" were denied. (*Id*. at PageID 7-8.)

"After [Whiteside] deal[t] with months of sickness back and forth to the nurse trying different body creams and losing weight from anxiety," Bausman took "pictures of the mold and

mildew inside the shower and ceiling wells on an iPhone camera." (*Id*. at PageID 12.)  Two (2) weeks later, on an unspecified date, the Individual Defendants allegedly told Whiteside to "shut [his] mouth" about shower mold and mildew. (*Id*.)  Whiteside was placed on thirty (30) days of lockdown as discipline for giving an e-cigarette to "a trustee." (*Id*. at PageID 13 (the "Lockdown").)  At the Lockdown's conclusion, the Individual Defendants "refused" Whiteside's request for a transfer from the A Pod to the C Pod. (*Id*.)

Whiteside alleges that the Individual Defendants' conduct about the A Pod Shower Conditions and the C Pod Shower Conditions (collectively, the "Shower Conditions") constitutes "malice[,] deliberate indifference[,] cruel punishment[,] official misconduct[,] moral turpitude[,] [and] disregard for human life and safety." (*Id*. at PageID 4, 14 & 17.)  The Court construes Whiteside's allegations about the Shower Conditions and his injuries from those conditions as claims of (1) unconstitutional conditions of confinement in violation of the Eighth Amendment and (2) deprivation of medical care in violation of the Fourteenth Amendment.

### 1. Claim Of Unconstitutional Conditions Of Confinement

The Eighth Amendment imposes a duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and to protect prisoners from substantial risks to their safety. *Farmer v. Brennan*, 511 U.S. 825, 832 & 844 (1994).  Prison officials must provide inmates with humane conditions of confinement.  *See Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).  "Extreme deprivations are required to make out a conditions-of-confinement claim."  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  "Because routine discomfort is part of the penalty that criminal offenders pay for their offenses against society, only those deprivations denying the minimal civilized measure of life's necessities are sufficiently grave to form the basis of an Eighth Amendment violation."  *Id.* (internal quotations and citations omitted).  "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the

meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987). Eighth Amendment claims based on prison conditions "have both an objective component (denial of ... 'the minimal civilized measure of life's necessities'), and a subjective component ('deliberate indifference')." *Berryman v. Johnson*, Nos. 88-1239 & 88-1280, 1991 WL 150808, at *9-10 (6th Cir. Aug. 6, 1991) (internal citations omitted); *see also Farmer*, 511 U.S. at 834.

The objective component requires that a deprivation be "sufficiently serious." *Farmer*, 511 U.S. 834; *Hudson*, 503 U.S. at 8–9; *Wilson v. Seiter*, 501 U.S. 294, 928 (1991). A prisoner must allege that: (1) he "is incarcerated under conditions posing a substantial risk of serious harm," *id.*; *see also Miller v. Calhoun Cnty.*, 408 F.3d 803, 812 (6th Cir. 2005); or (2) the defendant deprived him of the "minimal civilized measure of life's necessities." *Wilson*, 501 U.S. at 298 (quoting *Rhodes*, 452 U.S. at 347); *see also Hadix v. Johnson*, 367 F.3d 513, 525 (6th Cir. 2004).

The subjective component requires that jail officials acted with intent -- that they had a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834 (quoting *Wilson*, 501 U.S. at 297); *Dominguez v. Corr. Med. Servs.*, 555 F.3d 543, 550 (6th Cir. 2009). To demonstrate the subjective prong, a plaintiff must show that a prison official subjectively knew of an excessive risk of harm to the inmate's health or safety and chose to disregard that risk. *Farmer*, 511 U.S. at 837; *Wilson*, 501 U.S. at 302–03 (finding that plaintiffs must show that prison officials acted with "deliberate indifference" to a substantial risk that the prisoner would suffer serious harm).

### a. Whiteside Does Not Allege Facts Demonstrating A Sufficiently Serious Risk Of Harm From The Shower Conditions During April 17, 2021 Through April 17, 2022

Exposure to black mold may constitute an objectively serious risk of serious harm to inmate health under the Eighth Amendment. *See Morales v. White*, No. 07-2018-STA-DKV, 2008 WL 4585340, at *14 (W.D. Tenn. Oct. 10, 2008) (citing cases). Whiteside alleges that he suffered

injury from exposure to mold and mildew in the HCJC's showers.  (ECF No. 1 at PageID 5-7.)

Whiteside's allegation of harm from the Shower Conditions could plausibly satisfy the objective

component of the Eighth Amendment, *see*, *e.g.*, *Morales*, 2008 WL 4585340, at *14, but Whiteside

does not allege facts demonstrating that he suffered harm during the period April 17, 2021 through

April 17, 2022 (the "Relevant Period").  (*See* Section II.A, *supra*.)  The plausible inference from

the Consolidated Complaint is that Whiteside suffered harm from the Shower Conditions more

than one (1) year before April 17, 2022.  (*See*, *e.g.*, ECF No. 1 at PageID 5-7.)  Claims under §

1983 arising from harm Whiteside suffered more than one (1) year before April 17, 2022 are time-

barred.  The Court is not at liberty to speculate about claim accrual dates for statute of limitations

purposes.  The Consolidated Complaint alleges no facts demonstrating that Whiteside's claim of

unconstitutional conditions of confinement arising from the Shower Conditions was timely filed.

### b.  <u>Whiteside Does Not Allege Facts Demonstrating The Eighth Amendment's Subjective Prong</u>

Even assuming, for purposes of discussion, that (1) Whiteside meets the Eighth

Amendment's objective prong and (2) his claim of unconstitutional conditions of confinement was

timely filed, he does not allege sufficient facts demonstrating the Eighth Amendment's subjective

prong.  Whiteside does not allege that, during the Relevant Period, the Individual Defendants (1)

were aware the Shower Conditions posed an excessive risk to Whiteside's health and (2) did

nothing about the risk.  For example: (1) Whiteside alleges that Smith and Bausman ignored

Whiteside's grievances "a few days after" Whiteside was booked into the HCJC on July 24, 2020.

(ECF No. 1 at PageID 5-7.)  Whiteside's claims under § 1983 arising from that conduct are time-

barred (*see* Section II.A, *supra*); (2) "[M]onths into 2021," Coleman instructed Whiteside to "close

the [shower] curtain so that the mold couldn't be seen" by government inspectors.  (*Id*.)  The

Consolidated Complaint alleges no facts about the date Coleman's conduct occurred.  If Coleman's

conduct occurred sometime between January 1, 2021 through April 16, 2021, Whiteside's claim

under § 1983 arising from Coleman's conduct is time-barred; and (3) Whiteside does not allege that he told the Individual Defendants about injuries from the Shower Conditions.  (*See id.* at PageID 6 (Whiteside does not allege that his grievances to Smith and Bausman informed them of Whiteside's alleged injury from shower mold and mildew) and PageID 12 (alleging that Coleman took pictures of the Shower Conditions, but not that Coleman knew of Whiteside's alleged injury from the Shower Conditions).

The Individual Defendants' positions and titles at the HCJC, Whiteside's allegations of negligence about the Shower Conditions, and Whiteside's allegations about the Lockdown do not remedy the defects in pleading the Eighth Amendment's subjective prong.

Whiteside cannot sue the Individual Defendants merely because of their respective employment positions at the HCJC.  Whiteside must allege each Individual Defendant's personal involvement in the alleged deprivation of Whiteside's rights.  He does not.  *See Martin v. Harvey*, 14 F. App'x 307, 309 (6th Cir. 2001) (internal citations omitted).  (*See, e.g.*, ECF No. 1 at PageID 7 (alleging that "other officers" denied Whiteside's request to purchase shower cleansers).)  Failure to act in response to a grievance generally, *see* ECF No. 1 at PageID 6, is not the personal involvement that supports § 1983 liability.  *See Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002); *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017); *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir. 1984).

Whiteside's allegation that the Individual Defendants were negligent in failing to clean the showers and to allow inspections by government officials (ECF No. 1 at PageID 17) does not remedy the defects in his conditions of confinement claim.  Negligence is not a constitutional violation.  *See Farmer*, 511 U.S. at 835; *Lewellen,* 34 F.3d at 348.

Whiteside's factual allegations about the Lockdown do not demonstrate the Eighth Amendment's subjective prong.  The plausible inference from the Consolidated Complaint is that

Whiteside was sent to the Lockdown for disciplinary infraction reasons, not because he complained about the HCJC's shower conditions. (ECF No. 1 at PageID (alleging that the Individual Defendants had Whiteside "wr[itten] up for giving a trustee a[n] e-cig[arette] which we buy and th[e] pod officer passes them to him from me and others daily").

For all of these reasons, Whiteside's claim of unconstitutional conditions of confinement against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### 2.  Claim Of Deprivation Of Medical Care

Claims of deprivation of medical care under § 1983 arise under the Eighth Amendment's prohibition on cruel and unusual punishment. *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-03. When a plaintiff alleging a deprivation-of-medical-care claim is a pretrial detainee, his claim arises under the Fourteenth Amendment. *Winkler v. Madison Cnty.*, 893 F.3d 877, 890 (6th Cir. 2018) (quoting *Phillips v. Roane Cnty.*, 534 F.3d 531, 539 (6th Cir. 2008)). Whiteside was a pretrial detainee at the time of the events alleged in the Consolidated Complaint. (*See* ECF No. 1 at PageID 16.)

Like an Eighth Amendment claim, a Fourteenth Amendment claim of deliberate indifference has both an objective and a subjective component. *Id.* To satisfy the objective component, "the detainee must demonstrate the existence of a sufficiently serious medical need." *Winkler*, 893 F.3d at 890 (quoting *Spears v. Ruth*, 589 F.3d 249, 254 (6th Cir. 2009)). "[A] medical need is objectively serious if it is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would readily recognize the necessity for a doctor's attention.'" *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 1994).

"For the subjective component, the detainee must demonstrate that the defendant possessed a sufficiently culpable state of mind in denying medical care." *Id.* at 891 (quoting *Spears*, 589

F.3d at 254).  A defendant has a sufficiently culpable state of mind if he "knows of and disregards an excessive risk to inmate health or safety."  *Farmer*, 511 U.S. at 837.

### a. Whiteside Does Not Allege Facts Demonstrating The Fourteenth Amendment's Objective Prong

Whiteside alleges generally that he suffered "sinus problems", "rashes", and "chest infection" (collectively, the "Alleged Symptoms") from the Shower Conditions.  The Alleged Symptoms were "helped" by unspecified medicine provided by the HCJC's nurse.  (ECF No. 1 at PageID 7, 12 & 16-17.)  The Alleged Symptoms do not satisfy the Fourteenth Amendment's objective prong.

"Generally, rashes do not rise to the level of an objectively serious medical need."  *Lee v. Hatcher*, No. 16-cv-2590, 2016 WL 5467948, at *3 (M.D. Tenn. Sept. 29, 2016) (citing cases).  "[I]t is doubtful that a skin rash, even one which causes pain and itching, is a sufficiently serious medical need to support an Eighth Amendment violation."  *Id*. (internal citation omitted).  *See also Smith v. Schoefield*, No. 15-cv-574, 2016 WL 393540, at *4 (E.D. Tenn. Feb. 1, 2016) (citing cases concluding that sinus congestion does not constitute an objectively serious medical need under the Eighth Amendment) (internal citation omitted); *accord **Simpson v. Prison Health Servs., Inc.,*** No. 09–1167, 2010 WL 425159, at *3 (W.D. Mich. Jan. 27, 2010).  Whiteside alleges no facts about his alleged "chest infection", such as symptoms, date(s) of symptoms, and date(s) of diagnosis.  The Consolidated Complaint does not demonstrate that a failure to treat the alleged "chest infection" would have led to substantial and unnecessary suffering, injury, or death.  *See Blackmore*, 390 F.3d at 897.

Other factual allegations in the Consolidated Complaint underscore the conclusion that Whiteside fails to demonstrate the Fourteenth Amendment's objective prong.  When a prisoner has received some medical attention but disputes the adequacy of that treatment, federal District Courts are reluctant to second-guess the medical judgments of prison officials and to

constitutionalize claims that sound in state tort law.  *See  Westlake v. Lucas,* 537 F.2d 857, 860 (6th Cir. 1976).  Whiteside acknowledges that he received medical care.  (ECF No. 1 at PageID 7, 12 & 16-17.)   The Consolidated Complaint alleges that the Shower Conditions were unconstitutional, not that Whiteside received no medical care or inadequate medical care.  *See Lee*, 2016 WL 5467948, at *3 ("[E]ven if a rash constituted a serious medical need, Plaintiff's allegation that medical providers saw and treated him at least three times in four and a half months does not establish that the defendants have been deliberately indifferent to his condition").  Whiteside does not allege facts demonstrating the Fourteenth Amendment's objective prong.

### b. Whiteside Does Not Allege Facts Demonstrating The Fourteenth Amendment's Subjective Prong

The Consolidated Complaint does not allege that Whiteside requested medical care from, and was denied treatment by, the Individual Defendants.  Whiteside concedes that he was treated several times for the Alleged Symptoms.  (ECF No. 1 at PageID 7, 12 & 16-17.)

The Consolidated Complaint does not allege that the Individual Defendants subjectively knew of the Alleged Symptoms and disregarded those symptoms' supposed risks to Whiteside. For that reason, the Consolidated Complaint does not demonstrate that the Individual Defendants had a sufficiently culpable state of mind.  *See Farmer*, 511 U.S. at 834; *Wilson*, 501 U.S. at 302-03.  The Consolidated Complaint does not satisfy the Fourteenth Amendment's subjective prong.

For all of the reasons explained above, Whiteside's claim of denial of medical care against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### F. Claim Of Deprivation Of Whiteside's First Amendment Right To Freedom Of Speech Against The Individual Defendants In Their Individual Capacities

Whiteside alleges that (1) Coleman demanded that Whiteside "close the [shower] curtain so that the mold wouldn't be seen" by government inspectors (ECF No. 1 at PageID 8 (the

18

"Coleman Demand")) and (2) an unidentified Defendant threatened to "ship [Whiteside] to another jail for asking a[n] officer to help me get my District Court papers notarized" (*id.* at PageID 17 (the "Transfer Threat")).  Whiteside alleges the Coleman Demand and the Transfer Threat violated Whiteside's First Amendment right to freedom of speech.

The First Amendment guarantees individuals the "freedom to express disagreement with state action, without fear of reprisal based on the expression." *Barnes v. Wright*, 449 F.3d 709, 717 (6th Cir. 2006) (internal quotation omitted) (citing *McCurdy v. Montgomery Cnty.*, 240 F.3d 512, 520 (6th Cir. 2001)).  "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998)).  "Retaliation on the basis of a prisoner's exercise of his First Amendment rights violates the Constitution." *Harbin-Bey v. Rutter*, 420 F.3d 571, 579 (6th Cir. 2005).  A claim of retaliation has three elements:

> (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two—that is, the adverse action was motivated at least in part by the plaintiff's protected conduct.

*Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc).  "Protected conduct, for the purposes of a First Amendment retaliation claim, encompasses a prisoner's efforts to access the courts in . . . civil rights claims." *Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002); *see Thaddeus-X*, 175 F.3d at 391.  "[T]he plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct." *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  "Temporal proximity can provide circumstantial evidence of

retaliatory motive." *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017) (citing *Hill*, 630 F.3d at 475–76).

The Consolidated Complaint does not allege facts demonstrating that Whiteside was engaged in protected conduct during the Coleman Demand.  The plausible inference from the Consolidated Complaint is that Whiteside was upset that the Individual Defendants were allegedly hiding the Shower Conditions from government inspectors.  Whiteside alleges no facts from which to plausibly infer that the Coleman Demand prevented Whiteside from engaging in protected speech.  (*See* ECF No. 1 at PageID 8 (alleging that "these 3 officials tr[ie]d to hide the mold/mildew from the state and county inspector by forcing me as well as 5 others to hide the shower conditions from the inspectors each time").)

Filing a lawsuit is protected conduct for purposes of the First Amendment. *See*, *e.g.*, *Caldwell v. Luzerne Cnty. Corr. Facility Mgmt. Employees* 732 F. Supp. 2d 458,, 473 (M.D. Pa. 2010).  The Consolidated Complaint, however, alleges that the Transfer Threat did <u>not</u> deter Whiteside from engaging in that protected conduct.  (*See id*. at PageID 17 (alleging that "these Defendant[s] have violated my freedom of speech to the point that I have no choice but to file this complaint").)

Whiteside does not allege facts demonstrating that the Individual Defendants (1) took adverse action against Whiteside that would have deterred an average person from engaging in such conduct and (2) were motivated by Whiteside's protected conduct to take that action.  Whiteside's claim of First Amendment free speech deprivation against the Individual Defendants in their individual capacities is DISMISSED WITHOUT PREJUDICE.

Even if Whiteside's allegations about the Transfer Threat were construed as a claim of denial of access to the courts, his claim would fail.  Prisoners retain a constitutional right of access to the courts, *see Bounds v. Smith*, 430 U.S. 817, 821-22 (1977) (citing *Ex Parte Hull*, 312 U.S.

546 (1941)), which "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391.   Prison authorities must "provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law."  *Bounds*, 430 U.S. at 828. To have standing to pursue a First Amendment claim for denial of access to the courts, "a prisoner must show prison officials' conduct inflicted an 'actual injury,' *i.e.*, that the conduct hindered his efforts to pursue a nonfrivolous legal claim."  *Rodgers v. Hawley*, 14 F. App'x 403, 409 (6th Cir. 2001) (citation omitted); *see Thaddeus-X*, 175 F.3d at 394.  The Consolidated Complaint does not identify nonfrivolous claims Whiteside sought to pursue which the Individual Defendants hindered.  Whiteside expressly alleges that he did "file this complaint."  (ECF No. 1 at PageID 17.)   To the extent Whiteside alleges a claim of denial of access to the courts, that claim is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### G.  Claim Of Property Loss Against The Individual Defendants In Their Individual Capacities

Whiteside alleges that, on February 21, 2022, Coleman "took [my] property and damaged other property" (the "Confiscated Property").  (ECF No. 4 at PageID 38-39.)  Whiteside alleges that Coleman says she "replaced" the Confiscated Property.  (*Id*. at PageID 39.)  Whiteside alleges that he "bought [the property] while being at the jail with cash and purchased over the kiosk and online."  (*Id*.)

Whiteside alleges that, when HCJC staff returned Whiteside to the A Pod on an unspecified date, he asked to receive the Booking Allotments, but Smith denied Whiteside's request.  (*Id*. at PageID 38; *see id*. at PageID 39 (alleging that "when women are booked into this Jail / Justice Center, the exact same day they are moved to the back, which is the B pod, they receive e-cigs, TV, and clothing, unlike guys and myself wh[o] come to the A pod").)[3]

---

[3]  The Court liberally construes the Consolidated Complaint to allege that Whiteside had a possessory or ownership interest in the Allocated Property, for purposes of screening his

The Court construes Whiteside's allegations about the Confiscated Property and the Booking Allotments (collectively, the "Property Loss") as a claim of violation of the Fourteenth Amendment's Due Process Clause.

Under the Due Process Clause, "[n]o state ... shall deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. If a state employee deprives a plaintiff of his property, and the state affords a means to remedy the alleged loss, due process is not violated. *Parratt v. Taylor*, 451 U.S. 527, 543 (1981), *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*'s "adequate state law remedy doctrine", if state law provides an adequate remedy for loss or destruction of personal property by government officials, that property loss and destruction do not create a valid due process claim – even if a state employee's "random and unauthorized act" causes the property loss. *Id.* at 541 & 543-44; *see also id.* at 542 (concluding that, if there is an adequate post-deprivation remedy, the deprivation is not one "without due process of law"). The adequate state law remedy doctrine applies to negligent and intentional deprivations of property, as long as the government officials did not act under an established state procedure. *Hudson v. Palmer*, 468 U.S. 517, 530–36 (1984).

To succeed on a due process claim of property deprivation, a plaintiff must show that he requested a pre-deprivation hearing and government officials denied his request, *Macene v. MJW, Inc.*, 951 F.2d 700, 706 (6th Cir. 1991), or that the post-deprivation remedies the government provided were constitutionally insufficient. *Id.* A plaintiff "must plead and prove the inadequacy of state post-deprivation remedies if he is to recover for lost personal property." *Shuler v. Hall*, No. 3:18-cv-01223, 2019 WL 1777899, at *4 (M.D. Tenn. Apr. 23, 2019) (citing *Copeland v.*

_____

allegations as a claim of unconstitutional property loss. The Court has already concluded, *supra*, that Whiteside's allegations about the Allocated Property fail to state a claim to relief for discrimination. *See* Section II.D, *infra*. The Court makes no determinations at this screening phase whether Whiteside had a possessory or ownership interest in the Confiscated Property or the Allocated Property.

*Machulis*, 57 F.3d 476, 479–80 (6th Cir. 1995)).  The Sixth Circuit has held that "the State of Tennessee has provided adequate procedures to assure the return of items either negligently or intentionally converted, *see* Tenn. Code Ann. § 9-8-207, and in the absence of resort to state remedies, we do not believe that a federal court may assert jurisdiction." *Brooks v. Dutton*, 751 F.2d 197, 199 (6th Cir. 1985)*; see also Hyde v. Leibach*, No. 3:12-CV-168, 2012 WL 1598050, at *3 (M.D. Tenn. May 7, 2012) ("Tennessee has a ... viable remedy for losses of property caused by local officials.); *McLaughlin v. Weathers*, 170 F.3d 577, 581–82 (6th Cir. 1999) (Tennessee's statutory post-deprivation remedy satisfies due process requirements).

Whiteside does not allege "the inadequacy of state post-deprivation remedies." *See Shuler*, 2019 WL 1777899, at *4.  He does not allege that the Individual Defendants denied pre-deprivation remedies to Whiteside for the Property Loss or that post-deprivation remedies for the Property Loss were inadequate.  *See McMillan v. Fielding*, 136 F. App'x 818, 820 (6th Cir. 2005) (citing *Brooks*, 751 F.2d at 199) (finding Tennessee's statutory remedy against local governments for loss of property affords an adequate remedy to return items either negligently or intentionally converted).  Whiteside fails to allege sufficient facts stating a claim to relief for deprivation of due process under the Fourteenth Amendment.  The Consolidated Complaint's claim of Property Loss is DISMISSED WITHOUT PREJUDICE for failure to state a claim to relief.

### H.  Claims Of "Pain And Suffering", "Emotional Stress", And "Anxiety"

Whiteside alleges that the Individual Defendants "cause[d] me lots of sleepless nights[,] fear for my life[,] anxiety[,] grief[,] shame[,] humiliation[,] anger[,] embarrassment[,] feeling I deserved to be harmed and this punishment was coming from God."  (ECF No. 1 at PageID 9; *see also id.* at PageID 16 (alleging that the Individual Defendants "caused me so much stress[,] fear[,]

lack of sleep[,] [e]motional problems[,] anger[,] [and] hatred") (collectively, the "Emotional Injury Claim").)

The PLRA bars prisoner suits "for mental or emotional injury suffered while in custody without a prior showing of physical injury or the commission of a sexual act." 42 U.S.C. § 1997e(e). "[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward." *Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010).

The Consolidated Complaint's allegations about the Alleged Symptoms do not demonstrate a physical injury to Whiteside that was greater than *de minimis*. *See*, *e.g.*, *Mayes v. Travis State Jail*, No. A-06-CA-709, 2007 WL 1888828 (W.D. Tex. June 29, 2007) (finding no demonstration of sufficient injury to plaintiff where alleged exposure to mold resulted in sinus complaints); *Smith v. Fox*, No. 4:05-1554, 2006 WL 2090170, at *8 (D.S.C. July 25, 2006) (finding no proof of serious physical or emotional injury where plaintiff alleged that mold and mildew in his cell caused headaches, sinus infections, head cold, and arm rash); and *Osterback v. Ingram,* No. 3:96-cv-580, 2000 WL 297840, at *7 (N.D. Fla. Jan. 12, 2000) (finding that plaintiff's allegations of "extreme pain and suffering" and a "serious, debilitating sinus condition" were not injuries that were greater than *de minimis*), *aff'd*, 263 F.3d 169 (11th Cir. 2001), *cert. denied,* 536 U.S. 906 (2002).

The Emotional Injury Claim is DISMISSED WITHOUT PREJUDICE because Whiteside fails to allege sufficient facts demonstrating more than a *de minimis* physical injury for purposes of 42 U.S.C. § 1997e(e).

## III.   <u>AMENDMENT UNDER THE PLRA</u>

The Sixth Circuit has held that a district court may allow a prisoner to amend his complaint to avoid a *sua sponte* dismissal under the PLRA. *Lucas v. Chalk*, 785 F. App'x 288, 291 (6th Cir.

2019) (citing *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013) ("[W]e hold, like every other circuit to have reached the issue, that under Rule 15(a) a district court can allow a plaintiff to amend his complaint even when the complaint is subject to dismissal under the PLRA")); *see also Brown v. R.I.*, 511 F. App'x 4, 5 (1st Cir. 2013) (per curiam) ("Ordinarily, before dismissal for failure to state a claim is ordered, some form of notice and an opportunity to cure the deficiencies in the complaint must be afforded").  Leave to amend is not required where a deficiency cannot be cured.  *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001) ("This does not mean, of course, that every *sua sponte* dismissal entered without prior notice to the plaintiff automatically must be reversed.  If it is crystal clear that ... amending the complaint would be futile, then a *sua sponte* dismissal may stand."); *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that *sua sponte* dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts").

The Court grants leave to amend the claims dismissed without prejudice under the conditions set forth below.

## IV.    CONCLUSION

For the reasons set forth above:

A.    The (1) Time-Barred Claims and (2) the Four Claims are DISMISSED WITH PREJUDICE;

B.    The Consolidated Complaint's (1) claims against the HCJC, against the County, and against the Individual Defendants in their official capacities, (2) claim of discrimination against the Individual Defendants in their individual capacities, (3) claim of failure to train against the Individual Defendants in their individual capacities, (4) claim of unconstitutional conditions of confinement against the Individual Defendants in their individual capacities, (5) claim of deprivation of medical care against the Individual Defendants in their individual capacities, (6)

claim of First Amendment free speech deprivation against the Individual Defendants in their individual capacities, (7) claim of denial of access to the courts, (8) claim of Property Loss, and (9) Emotional Injury Claim (collectively, the "Claims Dismissed Without Prejudice") are DISMISSED WITHOUT PREJUDICE for failure to allege facts stating a claim to relief.

Leave to amend the Claims Dismissed Without Prejudice is GRANTED. Amended claims must be filed within twenty-one (21) days after the date of this Order. An amended pleading must comply with the Federal Rules of Civil Procedure, including but not limited to Rule 8's requirement of a short and plain statement of Whiteside's claims. An amended complaint supersedes the Consolidated Complaint and must be complete in itself without reference to the prior pleadings. Whiteside or his counsel must sign the amended complaint, and the text of the amended complaint must allege sufficient facts to support each claim without reference to any extraneous document. Any exhibits must be identified by number in the text of the amended complaint and must be attached to the complaint. All claims alleged in an amended complaint must arise from the facts alleged in the Consolidated Complaint. Each claim for relief must be stated in a separate count and must identify each Defendant sued on that count. If Whiteside fails to file an amended complaint within the time specified, the Court will dismiss the Consolidated Complaint with prejudice and enter judgment. The Court recommends that any such dismissal should be treated as a strike pursuant to 28 U.S.C. § 1915(g). *See Simons v. Washington*, 996 F.3d 350, 353 (6th Cir. 2021);

C.      The Motion (ECF No. 7) is DENIED. Given that the Consolidated Complaint (ECF Nos. 1 & 4) is partially dismissed with prejudice and partially dismissed without prejudice for the reasons explained *supra* in this Order, Whiteside's request for summons and service of process is without merit. (ECF No. 7 at PageID 47.) A *pro se* litigant is not entitled to summons and service of process when his complaint fails to survive screening under the PLRA. *See* 28 U.S.C. §

1915A(b); 28 U.S.C. § 1915(e)(2)(B); 28 U.S.C. § 1915(d).  Whiteside may renew his requests for summons, service of process, and a scheduling order (ECF No. 7 at PageID 47) if this case proceeds.

IT IS SO ORDERED, this 7th day of July, 2023.

 /s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE